**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ALONZO RICHARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-138-M (BH) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | Pretrial Management |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3-251*, this case has been referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are the following:

(1) *Motion for Summary Judgment Filed by the United States of America* ("Mot."), filed March 27, 2008;

(2) Defendant's *Brief in Support of Motion for Summary Judgment* ("Mot. Br."), filed March 27, 2008;

(3) Defendant's *Appendix to Brief in Support of Motion for Summary Judgment* ("Mot. App."), filed March 27, 2008;

(4) Plaintiff's *Response to Defendant's Summary Judgment Motion Pursuant to Rule 56 of the Fed. R. Civ. P.* ("Resp."), filed April 14, 2008;[1]

(5) Supplement to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Resp. Supp."), filed April 15, 2008; and

(6) Defendant's *Reply and Brief in Support* ("Reply"), filed May 1, 2008.

---

[1]The pages of Plaintiff's response are not consecutively numbered. The Court therefore cites to the response by page number with the first page as number 1.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court finds that Defendant's *Motion for Summary Judgment* should be **GRANTED.**

## I.  BACKGROUND

Plaintiff Alonzo Richard ("Plaintiff") is a federal prisoner currently incarcerated at the U.S. Penitentiary in Lompoc, California.  From February 3, 2005 to August 3, 2006, he was an inmate at the Federal Correctional Institute in Seagoville, Texas ("FCI Seagoville").  (Mot. App. at 30). Upon arrival at FCI Seagoville, medical personnel screened Plaintiff and assigned him to general population housing.  (*Id*. at 2).  Eleven days later, on February 14, 2005, Dr. Duckworth, M.D., examined Plaintiff as a part of a chronic care appointment.  (*Id*. at 10).  Dr. Duckworth continued the prescription medications Plaintiff took for his chronic disease and did not give any additional medical instructions or impose any medical restriction.  (*Id*.).

Plaintiff submitted an Inmate Request to Staff to the clinical director on February 18, 2005. (Mot. App. at 34).  In his request, Plaintiff stated that he had always been assigned to a single cell due to his chronic disease and wanted to know if FCI Seagoville had the same restriction.  *Id*.  Dr. Capps, M.D., the clinical director, responded that Plaintiff's request for assignment to a single cell was not a medical issue at FCI Seagoville.  *Id*.

On February 28, 2005, Plaintiff visited the chronic care unit on complaints of a cough, sore throat, and intermittent diarrhea.  (*Id*. at 11).  Nurse Ridge, R.N., noted that it was "medically appropriate to move pt [patient] closer to restroom on unit."  *Id*.  On March 8, 2005, Plaintiff requested a transfer to an institution with restrooms in the cells due to his constant diarrhea and frequent need to vomit.  (*Id*. at 35).  A staff member at FCI Seagoville responded that Dr. Capps reviewed Plaintiff's medical files and that the Utilization Review Committee would review the files

again on March 16, 2005. *Id.* Following the Utilization Review Committee's meeting, Plaintiff was moved to a room within 15 feet of a restroom. (*Id.* at 2, 38).

Plaintiff filed a Request for Administrative Remedy on March 25, 2005, claiming that the Utilization Review Committee misinterpreted his request; he stated that he never requested a single cell but rather requested a transfer from FCI Seagoville to an institution with restrooms in the cell. (Mot. App. at 36). He also indicated that other inmates harassed him about his chronic condition. Plaintiff's request and subsequent appeal were denied on the grounds that the staff at FCI Seagoville already addressed his medical need to be close to a restroom and that his chronic condition did not warrant a transfer. (*Id.* at 37-40).

From April through August of 2005, Plaintiff continued to voice concerns about his need for a cell with a restroom and a desire to transfer to a different institution. (*Id.* at 13-18). Dr. Duckworth explained that a medical transfer was not appropriate and that his problem about the lack of a restroom in his cell and complaints about other inmates could be addressed by his unit staff. (*Id.* at 15). Dr. Capps filed an administrative note on August 23, 2005, stating that Plaintiff refused a medical consultation, that he continued to complain about not having a private bathroom, and that he still wanted to be transferred to a different institution. (*Id.* at 18).

Following the discovery of a fire in his assigned room, Plaintiff was placed in protective custody in the Special Housing Unit ("SHU") cell block at FCI Seagoville on September 9, 2005. (*Id.* at 31, 46). The SHU cells at FCI Seagoville are each equipped with a toilet but do not have air-conditioning. (*Id.* at 64). One week after his reassignment to the SHU cell block, Plaintiff visited the chronic care unit with complaints of shortness of breath and vomiting blood; Plaintiff attributed his current condition to the heat. (*Id.* at 19). Plaintiff was released from protective custody on

January 3, 2006, and returned to the general population because an investigation of the fire revealed no threat to his safety. (*Id*. at 31, 51).

Dr. Capps examined Plaintiff on April 6, 2006. Dr. Capps issued medical instructions that Plaintiff be provided with a lower bunk, be assigned to a room near a restroom, and that he have air-conditioned quarters, probably in Building 54. (Mot. App. at 3, 23). Dr. Capps avers that he noted "air-conditioned quarters - probable Bldg. 54" because Building 54 was designed so that inmates are near a restroom. (*Id*. at 3) Dr. Capps further avers that his intention on April 6 was for Plaintiff to be housed near a restroom; the intention was not for Plaintiff to be housed in air-conditioned quarters because his medical condition did not warrant such a restriction. (*Id*. at 4).

Plaintiff returned to the SHU cell block on April 25, 2006, for assault and possession of a dangerous weapon. (*Id*. at 32, 51). On May 9, 2006, the warden recommended a disciplinary transfer to another institution in addition to other sanctions. (*Id*. at 51).

On June 9, 2006, Plaintiff alleges that he had to be carried to the medical unit by a corrections officer because he could not breathe, was bleeding from the nose, and could not stand by himself. (*Id*. at 60). Plaintiff attributed his current problems to the heat in the SHU cell block. (*Id*. at 24). On examination, Nurse Guinn observed no apparent respiratory distress and no evidence of nose bleeding; he recommended that Plaintiff increase his water intake and use ice packs to lower his body temperature. *Id*. Plaintiff's medical record from June 12, 2006, contains a note from psychology stating that he was having hallucinations and that his thought content centered on being moved to an air-conditioned cell. *Id*.

Dr. Capps saw Plaintiff again on July 5, 2006. Plaintiff continued to request an air-conditioned cell, but Dr. Capps explained that the only reason he approved an air-conditioned cell

was to try to get Plaintiff close to a restroom; since Plaintiff was housed in the SHU cell block (where each cell has its own restroom), the prior assignment to Building 54 was no longer necessary. (Mot. App. at 4, 25). Dr. Capps further explained that air-conditioning was not medically indicated. *Id*. Two days later, Plaintiff submitted a claim marked "sensitive" to the Bureau of Prison's regional office because his quarters were not air-conditioned, and as a result, he suffered from nose bleeds and had difficulty breathing. (*Id*. at 55-56). The regional office rejected this claim on July 17, 2006, because the issue did not meet the criteria for a sensitive request, and Plaintiff did not follow the regular procedures. (*Id*. at 57).

On July 12, 2006, Plaintiff filed a claim under the Federal Tort Claims Act ("FTCA"). (*Id*. at 58-62). The regional office denied Plaintiff's claim on January 4, 2007, and Plaintiff timely filed suit on January 22, 2007. (*Id*. at 63-64; *see Complaint*, *Richard v. Capps, et al*., No. 3:07-CV-138-M, at 4 (N.D. Tex., filed Jan. 22, 2007) (hereinafter, "Compl.")). Plaintiff's complaint alleges that staff at FCI Seagoville were negligent in failing to follow a medical restriction requiring that he be assigned to air-conditioned quarters, and that this negligence caused personal injury in the form of abnormal breathing and nose bleeds.[2] (Compl. at 1). Defendant United States ("Defendant") filed the instant motion on March 27, 2008, and the matter is ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material."

---

[2]Plaintiff's complaint also appears to raise a separate complaint of negligence for failure to move him to "Federal Detention Center Sergation [sic] after the two incidents occurred [referring to the incidents on June 9, 2006, and July 5, 2006]." (Compl. at 1). The Federal Detention Center Segregation to which Plaintiff refers are the air-conditioned quarters. (*See id*. at 6).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir.1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### III. ANALYSIS

The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred. 28 U.S.C. §§ 1346(b)(1), 2674. Federal inmates held in correctional facilities have the right to sue the United States under the FTCA for personal injuries they sustain as a result of a government employee's negligence. *United States v. Muniz*, 374 U.S. 150, 158 (1963); *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976). Because Texas is the state in which the alleged negligent acts took place, the substantive law of Texas controls any allegation of negligence. 28 U.S.C. § 1346(b)(1). A cause of action for negligence in Texas consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from that breach. *Van Horn v. Chambers*, 970 S.W.2d 542, 544. (Tex. 1998).

### A. **Breach of Duty**

Defendant moves for summary judgment on the grounds that the staff at FCI Seagoville did not breach their duty of care to Plaintiff because he was never under a medical restriction to be housed in air-conditioned quarters. (Mot. Br. at 12-14). In support of this claim, they cite to the medical record which shows that Plaintiff was under a medical restriction to be close to a restroom, not that he be housed in air-conditioned quarters. (Mot. App. at 2-3, 11). Pursuant to this medical restriction, the staff at FCI Seagoville relocated Plaintiff on March 21, 2005, to a bed that is approximately 15 feet from a restroom. (*Id.* at 2, 38). For the remainder of his time at FCI Seagoville, Plaintiff's bed was close to a restroom or toilet, including when he was housed in the SHU cell block with toilets in the individual cells.

The burden now shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial regarding his claim that he was under a medical restriction to be housed in air-conditioned quarters. *Celotex*, 477 U.S. at 324. The sole medical record cited by Plaintiff in support of his alleged medical restriction for air-conditioned quarters is Dr. Capps's April 6, 2006 entry, which lists Plaintiff's medical classification status as (1) air-conditioned quarters, probably in Building 54; (2) room near a restroom; and (3) low bunk. (Resp. at 3, 17, 38; Mot. App. at 23). Plaintiff's entire argument for negligence rests on this assignment by Dr. Capps.

In his affidavit, Dr. Capps explains that his intention at the time of the April 6, 2006 assignment was to house Plaintiff in Building 54 because he knew that Building 54 was designed so that inmates were near restrooms; he did not intend to impose a restriction for air-conditioned quarters because Plaintiff's medical condition did not warrant such a restriction. (Mot. App. at 4).

Moreover, Dr. Capps explained to Plaintiff on July 5, 2006, that air-conditioning was not medically indicated, and that the only reason air-conditioned quarters were approved was so that he could be near a restroom. (Mot. App. at 25). In response, Plaintiff provides no more than a conclusory allegation of a medical restriction for air-conditioned quarters, which is not competent summary judgment evidence. *Little*, 37 F.3d at 1075. Even interpreting Dr. Capps' April 6 entry in Plaintiff's favor as imposing a restriction for air-conditioning, it is undisputed that this restriction was rescinded by Dr. Capps himself on July 5.[3]

Plaintiff has failed to meet his burden to show that a genuine issue of material fact remains for trial. *Celotex*, 477 U.S. at 324. He has not identified evidence in the record sufficient to create a genuine issue of material fact as to whether air-conditioning was medically indicated for his chronic condition. Consequently, he has not identified evidence in the record showing that Defendant breached the duty of care to him. Because Plaintiff has failed to bring forth evidence to establish an essential element to his claim for negligence, Defendant's motion for summary judgment should be granted. *Celotex*, 477 U.S. at 322-23.

**B.  Proximate Cause**

Defendants also move for summary judgment on the grounds that Plaintiff cannot show the third element required in a negligence action, that damages proximately resulted from the breach of duty. (Mot. Br. at 14-15); *see Van Horn*, 970 S.W.2d at 544.

Plaintiff has brought forth no evidence to show that the lack of air-conditioning was a

---

[3]Defendant also contends that Plaintiff failed to establish through expert testimony that rescinding the restriction breached the standard of care Dr. Capps owed to his patient. (Mot. at 13; Reply at 3-4). *See Quijano v. U.S.*, 325 F.3d 564, 567-68 (5th Cir. 2003) (expert testimony required to prove the standard of care element in a medical malpractice action under Texas law). Because Plaintiff contends that he is only asserting a simple negligence claim, not a medical malpractice claim, this requirement is not applicable to the instant action.

substantial factor to his alleged injuries of nose bleeds and difficulty breathing. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (proximate cause consists of foreseeability and cause in fact; cause in fact is satisfied when it is shown that the act or omission in question was a substantial factor in bringing about the injuries that occurred, and without it, the injuries or harm would not have occurred) (citations omitted). Plaintiff's own sworn statements are the only evidence he presents to show the third element, but mere conjecture, guess, or speculation are insufficient to show cause in fact. *Id.* Accordingly, Defendant's motion for summary judgment may also be granted on this basis. *Celotex*, 477 U.S. at 322-23.

## IV.  CONCLUSION

For the reasons stated above, the Court recommends that Defendant's *Motion for Summary Judgment* be **GRANTED**.

**SO RECOMMENDED** on this 2nd day of May, 2008.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE